1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10    BRIAN DOYLE, et al.,

11                        Plaintiffs,

12            v.

13    NUTRILAWN U.S., INC.,

14                        Defendant.

15

16

CASE NO. C09-0942JLR

ORDER DENYING PLAINTIFFS'
MOTION FOR PARTIAL
SUMMARY JUDGMENT

     AND

ORDER GRANTING IN PART
AND DENYING IN PART
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

17                          **I.    INTRODUCTION**

18        This matter comes before the court on two motions for summary judgment:

19    Plaintiffs Brian Doyle, Brandi Doyle, and NW Lawn Care Professionals, LLC's

20    (collectively, "the Doyles") motion for partial summary judgment (Dkt. ## 43, 45-2); and

21    Defendant Nutrilawn U.S., Inc.'s ("Nutrilawn") motion for summary judgment and in the

22    alternative for a preliminary injunction (Dkt. # 46).  Having considered the motions, as

ORDER- 1

1  well as all papers filed in support and opposition, and deeming oral argument

2  unnecessary, the court DENIES the Doyles' motion for partial summary judgment (Dkt.

3  ## 43, 45-2) and GRANTS in part and DENIES in part Nutrilawn's motion for summary

4  judgment (Dkt. # 46).

5              **II.   BACKGROUND**

6          This action arises out of a Nutrilawn franchise agreement for the operation of a

7  lawn care business.  Mr. Doyle and Nutrilawn entered into a franchise agreement

8  ("Franchise Agreement") with an initial five-year term running from January 19, 2004, to

9  January 19, 2009.  (Doyle Decl. (Dkt. # 44) ¶ 2 & Ex. 1 (Franchise Agreement) at § 4.1.)

10  The Nutrilawn franchise product is a business program for establishing and operating a

11  lawn care center.  (Vincent Decl. (Dkt. # 47) ¶ 1.)

12         The Franchise Agreement provides that Mr. Doyle could renew the agreement by

13  delivering notice of renewal not less than six months prior to the expiration of the initial

14  five-year term.  (Franchise Agreement at § 4.2.)  The parties agree that Mr. Doyle did not

15  renew the Franchise Agreement in accordance with the provisions of section 4.2.  (Doyle

16  Mot. (Dkt. # 45-2) at 3; Nutrilawn Mot. (Dkt. # 46) at 2.)  Nevertheless, the parties

17  engaged in ongoing negotiations regarding renewal throughout the remainder of the five-

18  year term.  (Vincent Decl. ¶ 3.)  The parties carried on these negotiations beyond January

19  19, 2009, and Mr. Doyle continued to operate his lawn care business after this time.

20         On July 8, 2009, the Doyles brought suit against Nutrilawn in federal court,

21  asserting claims for violation of Washington's Franchise Investment Protection Act

22  ("FIPA"), chapter 19.100 RCW, violation of Washington's Consumer Protection Act

("CPA"), chapter 19.86 RCW, breach of contract, and breach of the covenant of good faith and fair dealing. (Compl. (Dkt. # 1).) Nutrilawn answered the complaint and pleaded counterclaims for breach of contract and quasi-contract, trademark infringement, breach of the duty of good faith and fair dealing, and violation of the Uniform Trade Secrets Act. (1st Am. Answer (Dkt. # 33).)

## III.    ANALYSIS

**A.    Motions to Strike**

As a preliminary matter, the court considers the parties' respective motions to strike. These motions are essentially moot as the court does not rely on the challenged evidence in the course of its ruling on the motions for summary judgment. Nevertheless, to the extent the motions are not moot, the court denies both motions to strike.

First, the Doyles move to strike portions of the declaration of Ryan Vincent, the president of Nutrilawn, pursuant to Federal Rules of Evidence 401, 402, 403, 408, 602, and 704. (Doyle Resp. (Dkt. # 55) at 16-20.) The court denies the motion to strike in its entirety. Contrary to the Doyles' arguments, this evidence is relevant and its probative value is not substantially outweighed by the danger of unfair prejudice or confusion. This evidence is also not "offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction." Fed. R. Evid. 408(a). Instead, this evidence is offered to show the ongoing negotiation efforts between the parties regarding renewal of the Franchise Agreement. Next, Mr. Vincent's personal knowledge and competence to testify are reasonably implied from his position as president of Nutrilawn. *Barthelemy v.*

1    *Air Lines Pilots Ass'n*, 897 F.2d 999, 1018 (9th Cir. 1990).  Finally, the court denies the

2    Doyles' motion to strike under Federal Rule of Evidence 704.  This rule does not itself

3    preclude evidence of the sort challenged by the Doyles.  To the extent Mr. Vincent's

4    declaration contains mere conclusory allegations, as the Doyles contend, this

5    consideration goes to the weight of the evidence, not its admissibility for purposes of

6    summary judgment.

7            Second, Nutrilawn moves to strike portions of the declaration of Kevin Murphy on

8    the basis that his statements constitute inadmissible legal conclusions under Federal Rule

9    of Evidence 702.  (Nutrilawn Surreply (Dkt. # 57) at 1-2.)  Nutrilawn also moves to strike

10   exhibits B and C to Mr. Muphy's declaration as irrelevant.  The court denies Nutrilawn's

11   motion to strike.  Although the court does not rely on Mr. Murphy's statements to

12   interpret the Franchise Agreement, as discussed below, the court is satisfied that his

13   declaration does not run afoul of Federal Rule of Evidence 702.  The court also finds

14   exhibits B and C to be relevant, albeit minimally so and of no weight in the court's

15   analysis.

16           The court therefore denies the parties' respective motions to strike.

17   **B.     Motions for Summary Judgment**

18           Summary judgment is appropriate if "the pleadings, the discovery and disclosure

19   materials on file, and any affidavits show that there is no genuine issue as to any material

20   fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

21   56(c)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. County of Los*

22   *Angeles*, 477 F.3d 652, 658 (9th Cir. 2007).  The moving party bears the initial burden of

ORDER- 4

1    showing there is no genuine issue of material fact and that he or she is entitled to prevail

2    as a matter of law.  *Celotex*, 477 U.S. at 323.  If the moving party meets his or her

3    burden, then the non-moving party "must make a showing sufficient to establish a

4    genuine dispute of material fact regarding the existence of the essential elements of his

5    case that he must prove at trial" in order to withstand summary judgment.  *Galen*, 477

6    F.3d at 658.  The non-moving party "must present affirmative evidence to make this

7    showing."  *Id.*  Furthermore, as the Ninth Circuit teaches, "[b]ald assertions that genuine

8    issues of material fact exist are insufficient," and a mere scintilla of evidence supporting

9    a party's position is also inadequate.  *Id.*

10       1.  <u>Non-Competition Clause and Covenant Not to Solicit Employees</u>

11       The Doyles and Nutrilawn both move for summary judgment with respect to

12   Nutrilawn's counterclaim that the Doyles are continuing to operate a lawn care business

13   in violation of the non-competition clause included in the Franchise Agreement at section

14   16.2.  The Doyles also move for summary judgment with respect to Nutrilawn's

15   counterclaim regarding the covenant not to solicit employees at section 16.3.

16          *a.  Contract Interpretation in Washington*

17       Washington follows the objective manifestation theory of contracts for

18   interpreting contracts.  *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 115 P.3d 262, 267

19   (Wash. 2005).  Under this approach, courts attempt to determine the parties' intent "by

20   focusing on the objective manifestations of the agreement, rather than on the unexpressed

21   subjective intent of the parties."  *Id.*  The subjective intent of the parties is thus generally

22   irrelevant if the court can determine the intent from the actual words used.  *Id.*  Courts

1  "give words in a contract their ordinary, usual, and popular meaning unless the entirety of

2  the agreement clearly demonstrates a contrary intent." *Id.*

3      *b. Non-Competition Clause and Covenant Not to Solicit Employees*

4     The present dispute focuses principally on the question of whether the non-

5  competition clause and the covenant not to solicit employees in the Franchise Agreement

6  were triggered on the facts of this case.  To answer this question, the court must resolve a

7  question of contract interpretation: does the "expiration" of the term of the Franchise

8  Agreement constitute a "termination" of the Franchise Agreement?  This is a question of

9  law for the court to decide.  For the reasons that follow, the court answers, "Yes."

10     Section 16.2.1 of the Franchise Agreement is a non-competition clause that applies

11  "following termination of this Agreement for any reason whatsoever."  (Franchise

12  Agreement at § 16.2.1.)  The non-competition clause provides in full:

13     Franchisee covenants and agrees that following termination of this
   Agreement for any reason whatsoever and for a period of two (2) years

14     thereafter, neither Franchisee, the Designated Representative nor any
   director, officer or shareholder of Franchisee shall, either individually or in

15     partnership, jointly or in conjunction with any person, firm, association,
   syndicate or corporation, and whether as principal, agent, shareholder or in

16     any manner whatsoever (except as an owner of five (5) percent or less of
   the issued and outstanding shares in any publicly-held corporation, unless

17     the same shall constitute a controlling interest therein), carry on or be
   engaged in or be concerned with or interested in or advise, lend money to,

18     guarantee the debts or obligations of, or permit their name or any part
   thereof to be used or employed by any person, firm, association, syndicate

19     or corporation, interested in the development, operation, franchising or
   management of lawn care business which are the same or similar to the

20     business carried on by Franchisor or its authorized franchisees . . . .

21  (*Id.* § 16.2.1.)  Section 16.3 of the Franchise Agreement is a covenant not to solicit

22  employees, which provides:

ORDER- 6

> Franchisee covenants and agrees that during the Term of this Agreement and following termination of this Agreement for any reason whatsoever and for a period of two (2) years thereafter, neither Franchisee, the Designated Representative, nor any director, officer or shareholder of Franchisee shall attempt to obtain any unfair advantage over Franchisor, any other franchisee of Franchisor or any affiliate of Franchisor by soliciting for employment any person who is, at the time of such solicitation, employed by such other franchisee, Franchisor or the said affiliate, nor shall they directly or indirectly induce any such person to leave his employment as aforesaid.

(*Id*. § 16.3.)  The parties agree that the non-competition clause and covenant not to solicit employees, by their plain language, are triggered upon "termination" of the Franchise Agreement.  They disagree, however, whether "termination" encompasses the "expiration" of the term of the Franchise Agreement.

   *c. "Expiration" and "Termination"*

   Having reviewed the Franchise Agreement and finding it unambiguous for present purposes, the court concludes that the "expiration" of the term of the Franchise Agreement constitutes a "termination" of the Franchise Agreement.  This interpretation flows from the Franchise Agreement as a whole and from the ordinary meaning of the terms used in the Franchise Agreement.  Although the Franchise Agreement, like most contracts, does not achieve perfect clarity, the agreement is generally written in a straightforward and consistent manner.  This lucidity simplifies the court's task here.

   To begin with, section 16.2.1 provides that the non-competition clause applies "following termination of this Agreement for any reason whatsoever."  (*Id*. § 16.2.1.)  The same is true of the covenant not to solicit employees under section 16.3.  This language is undeniably broad and implies that termination must be read expansively so as

ORDER- 7

1  to extend to "any reason whatsoever," but does not specify whether "expiration"

2  constitutes a "termination."  Section 18.1, however, builds on the breadth of sections

3  16.2.1 and 16.3 and provides additional guidance on the present question.  In addressing

4  certain effects of termination, section 18.1 states that these effects apply "[u]pon the

5  termination of this Agreement for any reason whatsoever, including the expiration of the

6  Term[.]"  (*Id.* § 18.1.)  This language unambiguously includes expiration of the term of

7  the Franchise Agreement within the scope of termination.  Finally, section 18.2, which

8  addresses the survival of covenants, provides:

9     Termination or expiration of the term of this Agreement shall not . . .
        release Franchisee from those obligations hereunder which survive
10    termination, including without limitation, those obligations set forth in this
        Section XVIII and in Section XVI of this Agreement.

11

12  (*Id.* § 18.2.)  Section 18.2 contemplates that the obligations set forth in Section XVI,

13  which includes the non-competition clause and the covenant not to solicit employees,

14  shall remain binding following either termination or expiration of the term of the

15  Franchise Agreement.[1]  Section 18.2 thus further clarifies that expiration falls within the

16  broad scope of termination sufficient to trigger the non-competition clause and the

17  covenant not to solicit employees under sections 16.2.1 and 16.3.  On the whole, when

18  these sections are viewed together and their language is given its ordinary meaning, it is

19  _____

20  [1] Section 18.2 is not a model of clarity.  However, the court interprets the language of
    section 18.2 as distinguishing between the termination of the term, *i.e.*, a termination prior to the
21  natural expiration of the term, and the termination of the Franchise Agreement itself, which
    occurs either by termination or expiration of the term.  In other words, the term of the Franchise
    Agreement can be ended either by termination or expiration, but both means of ending the term
22  constitute a termination of the Franchise Agreement.

ORDER- 8

1   evident that expiration of the term of the Franchise Agreement constitutes a termination

2   of the agreement.

3          The Doyles argue that expiration of the term does not constitute a termination of

4   the Franchise Agreement because section 17 does not define termination to include

5   expiration.  Yet section 17 does not define the term "termination" at all.  The Doyles'

6   assertions to the contrary are simply incorrect.  Instead, section 17 enumerates certain

7   events of default upon which Nutrilawn "shall have the right . . . to terminate this

8   Agreement[.]"  (*Id.* § 17.1.)  This is different from defining the term "termination."

9   Although the Doyles correctly observe that section 17 does not discuss the expiration of

10  the term of the Franchise Agreement, it does not follow that this absence demonstrates

11  that expiration does not constitute a termination.  Rather, because expiration is not an

12  event of default, section 17.1 simply does not address it.[2]  The court is therefore not

13  persuaded that section 17 supports the Doyle's proposed interpretation.

14         Neither the cases cited by the parties nor the FIPA warrant a different result where

15  the Franchise Agreement speaks for itself.  Although the Doyles point to cases that

16  distinguish between termination and expiration, these cases hold limited persuasive value

17  here as they necessarily rest on the language of the particular contracts at issue in those

18  cases.  *See, e.g., Specialty Rental Tools & Supply, LP v. Shoemaker*, 553 F.3d 415, 421

19  _____

20         [2] Indeed, it is difficult to understand the Doyles' argument that section 17 would have
    addressed expiration of the term of the Franchise Agreement if such expiration was meant to
21  constitute a termination of the Franchise Agreement.  In effect, the Doyles suggest that
    Nutrilawn should have drafted section 17 to provide that Nutrilawn has the right to terminate the
22  Franchise Agreement upon the expiration of the term of the agreement.  In the court's view, it
    would be entirely superfluous to do so.

1   (5th Cir. 2008); *Vollmer v. Akerson*, 688 N.W.2d 225, 228 (S.D. 2004); *Sonny's Pizza,*

2   *Inc. v. Braley*, 612 So.2d 844, 846-47 (La. Ct. App. 1992).  So too, the case law cited by

3   Nutrilawn is of limited persuasive value.  *See, e.g., Carvel Corp. v. Eisenberg*, 692 F.

4   Supp. 182, 184-85 (S.D.N.Y. 1988); *Carvel Corp. v. Rait*, 503 N.Y.S.2d 406, 410 (N.Y.

5   App. Div. 1986).  The court is also not convinced that the FIPA and other franchise

6   statutes require a result in contravention of the plain language of the Franchise

7   Agreement.  The court therefore does not rely on this case law or the FIPA and other

8   franchise statutes in interpreting the Franchise Agreement.

9        In addition, the Uniform Franchise Offering Circular ("UFOC"), although it

10  supports Nutrilawn's proposed interpretation, proves of limited persuasive value.  With

11  respect to the non-competition clause, the UFOC refers to section 16.2 as the provision in

12  the Franchise Agreement regarding "Non-Competition Covenants After the Franchise Is

13  Terminated or Expires."  (Doyle Decl. Ex. 2, Item 17(R).)  This language signals that the

14  non-competition clause applies upon both termination of the term and expiration of the

15  term.  The court, however, declines to rely on the UFOC to interpret the Franchise

16  Agreement.

17       Finally, the court is unmoved by the declarations of Douglas Berry and Mr.

18  Murphy.  This court discerns no need to rely on this evidence to interpret an agreement

19  that is unambiguous.

20       In sum, viewing the Franchise Agreement as a whole and giving its terms their

21  ordinary meaning, the court concludes that the "expiration" of the term of the Franchise

22  Agreement constitutes a "termination" of the Franchise Agreement.  Having reached this

1    conclusion, the court denies the Doyles' motion for partial summary judgment (Dkt. ##

2    43, 45-2).

3           d.  *Violation of the Non-Competition Clause*

4           Nutrilawn next argues that the Doyles are violating the non-competition clause of

5    the Franchise Agreement, and that Nutrilawn is thus entitled to a permanent injunction.[3]

6    (Nutrilawn Mot. at 10-13.)  In the alternative, Nutrilawn requests entry of a preliminary

7    injunction.  The Doyles resist entry of an injunction, but rest the entirety of their

8    opposition on the theory that the non-competition clause was not triggered on the facts of

9    this case.  (Doyle Resp. at 13-14.)

10          The court now concludes that the non-competition clause applies here.  In

11   reaching this conclusion, the court need not resolve whether the Franchise Agreement

12   expired at the end of the initial term in January 2009 or whether it was terminated by

13   Nutrilawn following an event of default in August 2009.  The non-competition clause

14   was triggered under either circumstance because each constitutes a termination of the

15   agreement.

16          On this record, however, the court declines to conclude that the Doyles are acting

17   in contravention of the non-competition clause.  The court also declines to consider

18   whether the terms of the non-competition clause are enforceable.  Nutrilawn has

19   presented only minimal evidence regarding the alleged violation of the non-competition

20   clause.  (*See* Vincent Decl. ¶ 5.)  This evidence does not provide sufficient information to

21   _____

22          [3] In its motion, Nutrilawn does not address the covenant not to solicit employees.

satisfy Nutrilawn's burden to show that no genuine issue of material fact exists regarding

whether the Doyles violated or are violating the non-competition clause.  The court

therefore denies without prejudice Nutrilawn's requests for a permanent injunction and

for a preliminary injunction.  Nutrilawn may file a subsequent motion for injunctive

relief, if and when it deems appropriate.  However, the court encourages the parties to

meet and confer regarding the non-competition clause and this court's order before filing

new motions.

2.  <u>Reasonable Opportunity to Renew the Franchise Agreement Claims</u>

Nutrilawn also moves for summary judgment in its favor with respect to all of the

Doyles' five causes of action.  (Nutrilawn Mot. at 15.)  In these claims, the Doyles allege

that Mr. Doyle was denied a reasonable opportunity to renew the Franchise Agreement.

*a.  FIPA Claim*

The court denies summary judgment in favor of Nutrilawn with respect to the

Doyles' first cause of action for violation of the FIPA.  The Doyles allege that Nutrilawn

violated the FIPA by failing to provide an offering circular or franchise disclosure

document that Mr. Doyle allegedly requested in December 2008.  RCW 19.100.080

provides:

> It is unlawful for any person to sell a franchise that is registered or required
> to be registered under this chapter without first delivering to the offeree, at
> least ten business days prior to the execution by the offeree of any binding
> franchise or other agreement, or at least ten business days prior to the
> receipt of any consideration, whichever occurs first, a copy of the offering
> circular required under RCW 19.100.040, with any addition or amendment
> to the offering circular required by RCW 19.100.070, together with a copy
> of the proposed agreements relating to the sale of the franchise.

ORDER- 12

1   In a similar vein, the Code of Federal Regulations provides:

2   In connection with the offer or sale of a franchise to be located in the
3   United States of America or its territories, unless the transaction is
    exempted under Subpart E of this part, it is an unfair or deceptive act or
4   practice in violation of Section 5 of the Federal Trade Commission Act:

5   (a) For any franchisor to fail to furnish a prospective franchisee with a
    copy of the franchisor's current disclosure document, as described in
6   Subparts C and D of this part, at least 14 calendar-days before the
    prospective franchisee signs a binding agreement with, or makes any
7   payment to, the franchisor or an affiliate in connection with the
    proposed franchise sale.

8   16 C.F.R. § 436.2.

9       Here, Nutrilawn asserts that it was not subject to RCW 19.100.080 because that

10  section only applies to a person "that is registered or required to be registered" and

11  Nutrilawn was neither registered nor required to be registered in December 2008.

12  Nutrilawn also argues that 16 C.F.R. § 436.2(a) does not apply on the facts of this case

13  because 16 C.F.R. § 436.1(t) provides that the sale of a franchise "does not include

14  extending or renewing an existing franchise agreement where there has been no

15  interruption in the franchisee's operation of the business, unless the new agreement

16  contains terms and conditions that differ materially from the original agreement."  The

17  court agrees with Nutrilawn that 16 C.F.R. § 436.2(a) does not apply here because the

18  parties were negotiating to extend or renew the existing franchise, not negotiating for the

19  offer or sale of a new franchise.  By contrast, the court disagrees with Nutrilawn that

20  summary judgment is appropriate with respect to the Doyles' FIPA claim.  Nutrilawn's

21  assertions regarding its registration status in Washington may or may not be correct.  If

22  correct, it appears likely that the Doyles do not have a viable FIPA claim.  However,

ORDER- 13

1   Nutrilawn has presented no evidence to establish that it was not registered in Washington

2   in December 2008.  In his declaration, Santino Ferrante states only that Nutrilawn was

3   registered in Washington from May 15, 2003, through May 14, 2004; he simply does not

4   address Nutrilawn's registration status on other dates.  (Ferrante Decl. (Dkt. # 60) ¶ 3 &

5   Ex. B.)  The court therefore denies summary judgment on the Doyles' FIPA claim.

6           *b.  CPA Claim*

7           The court denies summary judgment in favor of Nutrilawn with respect to the

8   Doyles' second cause of action for violation of the CPA.  A violation of the FIPA may

9   constitute a violation of the CPA.  *See* RCW 19.100.190; *Nelson v. Nat'l Fund Raising*

10  *Consultants, Inc.*, 842 P.2d 473, 478 (Wash. 1992).  Neither Nutrilawn nor the Doyles

11  address the merits of the Doyles' CPA claim in their briefing.  Because a genuine issue of

12  material fact remains as to Nutrilawn's registration status and its obligations under the

13  FIPA, and in light of the parties' cursory briefing, the court denies summary judgment as

14  to the Doyle's CPA claim.

15          *c.  Breach of Contract Claim*

16          The court grants summary judgment in favor of Nutrilawn with respect to the

17  Doyles' third cause of action for breach of contract.  The Doyles allege that Nutrilawn

18  breached the Franchise Agreement by failing to offer Mr. Doyle a meaningful

19  opportunity to renew the agreement.  The question of whether Nutrilawn breached the

20  Franchise Agreement is distinct from the question of whether it violated obligations

21  imposed by the FIPA.  The Doyles have not identified any section of the Franchise

22  Agreement that they believe Nutrilawn breached.  Mr. Doyle may have been dissatisfied

1   with the renewal process and the associated negotiations between the parties, but the

2   Doyles have not submitted any evidence to support their contention that this constitutes a

3   breach of contract.  On this record, the court grants Nutrilawn's motion as to the Doyles'

4   breach of contract claim.

5                    *d.  Breach of the Duty of Good Faith and Fair Dealing Claims*

6          The court grants summary judgment in favor of Nutrilawn with respect to the

7   Doyles' fourth and fifth causes of action for breach of the duty of good faith under the

8   FIPA and breach of the covenant of good faith and fair dealing.  In Washington, there is

9   in every contract an implied duty of good faith and fair dealing.  *Badgett v. Sec. State*

10  *Bank*, 807 P.2d 356, 360 (Wash. 1991); *Carlile v. Harbour Homes, Inc.*, 194 P.3d 280,

11  291 (Wash. Ct. App. 2008).  This duty "requires only that the parties perform in good

12  faith the obligations imposed by their agreement."  *Badgett*, 807 P.2d at 360.  By

13  contrast, the duty neither obligates a party to accept a material change in the terms of the

14  contract, nor injects substantive terms into the contract.  *Id*.  The FIPA also imposes an

15  obligation that the franchisor and the franchisee "shall deal with each other in good

16  faith," and enumerates specific proscribed conduct.  RCW 19.100.180(1); *see Corp. v.*

17  *Atl. Richfield Co.,* 860 P.2d 1015, 1019 (Wash. 1993).  "While the scope of the

18  contractual duty of good faith may have been unclear when FIPA was enacted,

19  Washington courts have since recognized that the duty of good faith does not operate to

20  create rights not contracted for, nor does it override the express terms of a contract."

21  Douglas C. Berry, David M. Byers & Daniel J. Oates, *State Regulation of Franchising:*

22

ORDER- 15

1    *The Washington Experience Revisited*, 32 SEATTLE U. L. REV. 811, 871 (2009) (citing

2    *Badgett*, 807 P.2d at 360).

3           Here, the Doyles have presented no evidence to demonstrate that Nutrilawn

4    violated its good faith obligations.  Specifically, the Doyles do not identify any section of

5    the Franchise Agreement that they believe Nutrilawn breached, do not point to any

6    obligation imposed by the Franchise Agreement that they believe Nutrilawn failed to

7    carry out in good faith, and do not argue that Nutrilawn violated any of the specific

8    provisions of RCW 19.100.180(2).  As the Washington Supreme Court teaches, the duty

9    of good faith and fair dealing "arises only in connection with terms agreed to by the

10   parties."  *Badgett*, 807 P.2d at 360.  The Doyles, however, have not shown how

11   Nutrilawn failed to act in good faith in connection with the terms of the Franchise

12   Agreement.  On this record, even viewing the evidence in the light most favorable to the

13   Doyles, the court concludes that Nutrilawn has satisfied its burden to show that no

14   genuine issue of material fact exists and that it is entitled to judgment as a matter of law.

15

16

17

18

19

20

21

22

ORDER- 16

1

IV.   CONCLUSION

2

        For the foregoing reasons, the court DENIES the Doyles' motion for partial

3

summary judgment (Dkt. ## 43, 45-2) and GRANTS in part and DENIES in part

4

Nutrilawn's motion for summary judgment (Dkt. # 46).

5

        Dated this 17th day of May, 2010.

6

7

        _____

8

        JAMES L. ROBART
        United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22